# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KATHRYN E. DIEFFENBACH, | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| | : | |
| ANDREW SAUL, | : | |
| Commissioner of the | : | |
| Social Security Administration, | : | |
| Defendant | : | NO. 19-4948 |

## MEMORANDUM

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                        May 29, 2020

Kathryne E. Dieffenbach ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act. Plaintiff has filed a brief in support of her request for review and the Commissioner has responded to it. Plaintiff did not file a reply. For the reasons set forth below, Plaintiff's request for review is granted.

## I.    PROCEDURAL HISTORY[1]

On May 26, 2016, Plaintiff applied for DIB, alleging disability beginning May 2, 2014. R. 15; Pl. Br. at 7; Resp. at 1. The Social Security Administration ("SSA") denied Plaintiff's initial claims; therefore, she requested a hearing before an Administrative Law Judge ("ALJ"). Pl. Br. at 7; R. 15. The SSA granted Plaintiff's request and scheduled a hearing before an ALJ on March 26, 2018, in Harrisburg, Pennsylvania. R. 15, 27; Pl. Br. at 7.

Plaintiff appeared in person before Theodore Burock, the ALJ, for her hearing; represented

---

[1] The Court has reviewed and considered the following documents in analyzing this case: Plaintiff's Brief and Statement of Issues in Support of Motion for Request for Review ("Pl. Br."), Defendant's Response to Request for Review of Plaintiff ("Resp."), the administrative record. ("R."), and Exhibits ("Ex.").

by an attorney, she testified at the hearing. R. 15, 29-59. A vocational expert, Sherly Bustin ("the VE"), appeared at the hearing, but did not testify. R. 46, 58. On September 6, 2018, the ALJ, using the sequential evaluation process for disability[2], issued an unfavorable DIB decision. R. 15-26. Thereafter, on November 2, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final determination of the Commissioner. R. 7-14. On October 18, 2019, Plaintiff sought judicial review by this Court; both parties have consented to the undersigned's jurisdiction, pursuant to 28 U.S.C. § 636(c).

## II. FACTUAL BACKGROUND

A. <u>Personal History</u>

Plaintiff, born on May 8, 1953, R. 22; Pl. Br. at 8, was 60 years old at the time of her alleged onset date. R. 22; Pl. Br. 8. She is 5 feet, 5 inches tall and weighed approximately 172 pounds at the date of her hearing. R. 32. Plaintiff completed the eleventh grade and never received her GED; she is able to communicate in English. R. 22, 36; Pl. Br. at 8. Plaintiff's past

---

[2] The Social Security Regulations provide the following five-step sequential evaluation for determining whether or not an adult claimant is disabled:

> 1. If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 C.F.R. §§ 404.1520(b).
>
> 2. If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 C.F.R. §§ 404.1520(c).
>
> 3. If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. §§ 404.1520(d).
>
> 4. If the claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. §§ 404.1520(f).
>
> 5. The Commissioner will determine whether, given the claimant's residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, he is or is not disabled. *See* 20 C.F.R. §§ 404.1520(g).

employment included work at Oregon Dairy Farm Market from 1979 to 1996, a seafood retailer from 1996 to 2013, an overnight caretaker for her sister and a secretary and vice-president at Kathy's Seafood House. R. 21-22, 146, 151; Pl. Br. at 8. Plaintiff currently lives with her husband. R. 35.

B. <u>Plaintiff's Testimony</u>

Plaintiff testified about her impairments at the March 26, 2018 hearing. R. 27-59. She stated that chronic lower back pain has adversely impacted her ability to work. R. 38, 145. Although Plaintiff's back pain originates in her lower back, it radiates down to her leg. She testified that the pain does worsen in intensity, but is constant. R. 39. Plaintiff stopped taking narcotics to mitigate her back pain which caused the pain to return. R.41-43. She now takes six to eight Advils throughout the day, but she alleges that the pain is still constantly. R. 39.

Physical therapy and pain management treatment did not abate her pain. R. 39-42. The physical therapist recommended injections, which Plaintiff refused, because she did not want to become reliant on them. R. 42. Plaintiff is able to walk for 500 yards before she needs to take a three to five-minute break. R. 50-51. She only cooks one meal a day and must take breaks every four to six minutes, depending on the day. R. 51-52. She is able to do laundry as long as someone helps her carry the load. *Id*.

Plaintiff is unable to lift more than five pounds, or she may "throw her back out." R. 51-52. She testified that she last threw her back out two years ago, in 2016. R. 54. Plaintiff drives once or twice a week. R. 35. She testified that she struggles to sleep, and gets only an hour of sleep before she awakens. R. 52.

### III. THE ALJ's FINDINGS

In his decision, the ALJ issued the following findings:

    1. The [Plaintiff] last met the insured status requirements of the

        Social Security Act on March 31, 2015.

2.     The [Plaintiff] has not engaged in substantial gainful activity during the period from her alleged onset date of May 2, 2014 through her date last insured of March 31, 2015 (20 CFR 404.1571 *et seq.*).

3.     Through the date last insured, the [Plaintiff] had the following severe impairments: Lumbar Degenerative Disc Disease and Obesity (20 CFR 404.1520(c).

4.     Through the date last insured, the [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.     After careful consideration of the entire record, the undersigned finds that, through the date last insured, the [Plaintiff] had the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c).

6.     Through the date last insured, the [Plaintiff] was unable to perform any past relevant work (20 CFR 404.1565).

7.     The [Plaintiff] was born on May 8, 1953 and was 61 years old, which is defined as an individual closely approaching retirement age, on the date last insured (20 CFR 404.1563).

8.     The [Plaintiff] has a limited education and is able to communicate in English (20 CFR 404.1564).

9.     Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the [Plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Through the date last insured, considering the [Plaintiff's] age, education, work, experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the [Plaintiff] could have performed (20 CFR 404.1569 and 404.1569(a)).

> 11. The [Plaintiff] was not under a disability as defined in the Social Security Act, at any time from May 2, 2014, the alleged onset date, through March 31, 2015, the date last insured (20 CFR 404.1520(g)).

R. 17-19, 22-23.

## IV.   DISCUSSION

A.   <u>Standard of Review</u>

Judicial review of the Commissioner's final decision is as follows. The Commissioner's findings of fact will not be disturbed, if they are supported by substantial evidence. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is not "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted). It is more than a mere scintilla of evidence but may amount to less than an evidentiary preponderance. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Overall, this test is deferential to the ALJ and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo,* might have reached a different conclusion. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). Indeed, the court is not permitted to weigh the record evidence itself. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). By contrast, the Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.   <u>Burden of Proof in Disability Proceeding</u>

In order to be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to

5

last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). Plaintiff may establish a disability through: (1) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. *Heckler*, 461 U.S. at 460. Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents her from returning to her past employment. *See Brown*, 845 F.2d at 1214. If Plaintiff proves that her impairment results in functional limitations to performing her past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff is capable of performing given her age, education, work experience and residual functional capacity. *See Poulos,* 474 F.3d at 92; *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

C.       Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process, the ALJ determined that, although Plaintiff is unable to perform any of her past relevant work, she is not disabled pursuant to 20 C.F.R. 404.1520(g). R. 23. The ALJ, applying the Medical-Vocational Guidelines, concluded that there are jobs in the national economy that Plaintiff can perform. R. 23

Plaintiff argues that the ALJ's decision is not supported by substantial evidence. Pl. Br. at 4. Next, she asserts that the ALJ should have applied the lifetime commitment profile to determine whether she is entitled to DIB. *Id*. Finally, Plaintiff contends that the ALJ erred by applying the

6

Medical-Vocational Guideline for medium work[3] to find her not disabled. Pl. Br. at 10.

The Commissioner disputes Plaintiff's arguments. First, the Commissioner argues that the relevant period of review is narrow and spanned May 2, 2014 to March 31, 2015. Resp. at 5. Second, the Commissioner contends (1) that the Plaintiff failed to demonstrate that the lifetime commitment profile applies to her claim, and (2) the ALJ's decision that Plaintiff could perform medium work is supported by substantial evidence. Resp. at 6-7. Finally, the Commissioner asserts that an award of benefits is not a proper remedy in this case; instead, she should file a new application for Supplemental Security Income ("SSI"). Resp. at 12.

This Court finds that the ALJ's decision should be reversed and remanded, because it is not supported by substantial evidence.

1. The ALJ Erred when he Failed to Apply the Lifetime Commitment Profile

Plaintiff argues that the ALJ should have applied the lifetime commitment profile to determine that she was entitled to DIB. Pl. Br. at 10-11. Plaintiff asserts that she has worked since the age of sixteen (16); her work history has required her to lift more than a hundred pounds and stand on her feet for prolonged periods of time. Pl. Br. at 11.

This Court agrees. The lifetime commitment profile as described at POMS DI 25010.001 B(3)[4] requires an individual to: (1) not work at substantial gainful activity (SGA) level; (2) have a lifetime commitment, which is 30 years or more, to a field of work that is unskilled, skilled or semi-skilled, but with no transferable skills; (3) can no longer perform this past work because of severe impairments(s); (4) are closely approaching retirement age (age 60 or older); and (5) have

---

[3] "Medium work [is defined] as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work require[s] standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds." 20 C.F.R. 404.1567(c).
[4] *See* https://secure.ssa.gov/poms.NSF/lnx/0425010001 (last accessed May 21, 2020).

no more than a limited education. *See* POMS DI 25010.001. The POMS further notes that to satisfy the profile, "the 30 years of lifetime commitment work does not have to be at one job or for one employer but rather work in one field of a very similar nature." *Id*.

Here, Plaintiff established the requisite 30-year work history and demonstrated that she has no transferrable skills from her prior skilled work. Plaintiff initially worked for Oregon Dairy Farm Market from 1979 until 1996, totaling seventeen (17) years. R. 133-34. She, next, worked at Kathy's Seafood Company as a secretary and vice-president from 1996 until 2010 for fourteen (14) years; finally, as her sister's caregiver. R. 151. Thus, she satisfies the thirty (30) year work requirement, without adding time spent as a caregiver.

The Commissioner argues that Plaintiff's time at Kathy's Seafood Company does not apply towards the lifetime commitment profile because the work was not of "similar nature" to that of the dairy market. Resp. at 7. Instead, the Commissioner contends that her skills as a secretary and/or vice president of a company should be considered skilled past relevant work and that it would require significant, transferable skills. *Id*. These arguments, however, must fail. First, although Plaintiff's positions were labeled as a "secretary" and "vice-president", actual duties included lifting fifty to hundred-pound cases of shrimp, fish, and food supplies. R. 152-153. She had to use machines, tools, and equipment. *Id*. Plaintiff did not sit, walked "all day" and stooped approximately two hours a day. R. 153. Second, the ALJ already determined that during Plaintiff's time at Kathy's Seafoods House she lifted boxes and performed this job at the heavy exertional level. R. 22. Thus, both job activities count towards her work in the "retail food industry."

Furthermore, Plaintiff is able to satisfy the other lifetime commitment profile requirements. She has not engaged in SGA since 2013, when she last worked as her sister's personal care giver. R. 151. She also satisfies the third element which requires an individual to no longer perform past

work because of severe impairments; in finding #6, the ALJ expressly found that Plaintiff is unable to perform any past relevant work.  R. 22.  Finally, Plaintiff satisfies the last two elements - she was 61 years old at the time she filed for benefits and had limited education, as she only completed the eleventh grade.  R. 22, 32.

Plaintiff fully satisfies all the lifetime commitment profile.  Hence, upon remand, the ALJ shall properly apply the lifetime commitment profile when evaluating Plaintiff's claim.

2. The ALJ Erred by Failing to Incorporate Plaintiff's Lifting Restriction into his RFC Assessment

Plaintiff argues that the ALJ erred when he discounted her testimony concerning her pain without contrary medical evidence.  Pl. Br. at 14.  She asserts that although the ALJ "opined that the medical evidence did not support [Plaintiff's] allegations of debilitating symptom, … the notes of record specifically indicate her symptoms are consistent with her diagnosis."  Pl. Br. at 13.  Furthermore, Plaintiff contends that the ALJ erred when he concluded that no opinion evidence existed because the Disability Adjudicator indicated that she is limited to light work.  *Id*.

This Court agrees.  In the Third Circuit, an ALJ "must give serious consideration to a claimant's subjective complaints of pain, even when those complaints are not supported by objective evidence."  *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993).  The *Mason* Court further held that an ALJ may not disregard the claimant's subjective testimony, unless the record contains contrary medical evidence.  *Id*. at a1068.

An ALJ must also "provide some explanation for a rejection of probative evidence which would suggest a contrary disposition." *Id*.  An ALJ "may properly accept some parts of the medical evidence and reject other parts, but [he] must consider all the evidence and give some reason for discounting the evidence [he] rejects." *Id*.

Here, the ALJ ignored contrary medical evidence in the record which supported Plaintiff's

9

claim. Records state that Plaintiff had exhibited difficulty getting off the examination table, R. 268-69, as well as general uncomfortableness from her chronic back pain, R. 315-19, sometimes "throwing out" her back. R. 328. One physical therapist noted that Plaintiff was "very stiff, rigid… and demonstrated significant weakness." R. 338-40. Dr. Ashley Tshudy's May 13, 2015 progress notes indicated that Plaintiff's MRI showed diffuse degenerative changes throughout her lumbar spine and significant facet arthropathy at the lower levels. R. 261. Even so, the ALJ determined that Plaintiff's subjective complaints were inconsistent with the record and concluded that she possessed the RFC to perform the full range of medium work. R. 19. The ALJ ignored medical evidence that was inconsistent with his decision, hence, he could not explain why he rejected the contrary medical evidence. *See Adorno*, 40 F.3d 43, 48 (3d Cir. 1994).

The ALJ's failure to address contrary medical evidence resulted in his failure to fully credit Plaintiff's testimony. Plaintiff testified that she is unable to lift more than five pounds, stand for over five minutes and could walk more than fifty yards before she must rest. R. 39-42, 50-52. Although the ALJ cites an MRI report that states the Plaintiff suffered from degenerative changes in her lumbar spine, R. 20, which supports the Plaintiff's testimony, the ALJ fails to cite any objective medical evidence that contradicts Plaintiff's testimony. Moreover, there is objective medical evidence of conditions that could reasonably produce pain. R. 268-69, 315-19, 338-40. None of the records the ALJ cites address Plaintiff's inability to lift more than five pounds. Furthermore, even though the ALJ found records that say that Plaintiff's gait was normal, R. 20, none of the records discuss the distance Plaintiff could walk.

The ALJ's failure to credit Plaintiff's testimony without properly addressing the contradictory medical evidence constituted legal error. Hence, the ALJ's decision lacks substantial evidence. Upon remand, the ALJ shall reconsider Plaintiff's testimony when evaluating her RFC

and, if the ALJ wishes to reject Plaintiff's testimony, cite contrary medical evidence to explain why.

      3. <u>The ALJ Erred when he Improperly Applied the Medical-Vocational Guidelines</u>

Plaintiff argues that the ALJ failed to acknowledge her non-exertional limitations, and thus, should not have used the Medical-Vocational Guidelines to determine whether she was disabled. Pl. Br. at 12.  Plaintiff contends that the ALJ erred when he found her not disabled under Rule 203.04; instead, if the ALJ was inclined to use the Guidelines, he should have applied Rule 202.02 and concluded that she was in fact disabled.  *Id*.  Plaintiff asserts that the medical evidence, in conjunction with her testimony and advanced age, required the ALJ to obtain vocational testimony from the available VE.  Pl. Br. 13-14.

Rule 202.02 provides that a claimant who is of advanced age, has a limited education, and has no transferable job skills must be found disabled.  Rule 202.02, 20 C.F.R. Part 404, Subpart P, App. 2, Table.  However, this rule only applies to those individuals limited to light work as a result of severe medically determinable impairment(s).  *Id*.  Instead, Rule 203.04, which the ALJ applied, provides that a claimant who is of advanced age, has limited education, and has no transferable skills, is not disabled if limited to medium work.  Rule 203.04, 20 C.F.R. Part 404, Subpart P, App. 2, Table.

Third Circuit precedent holds that once a claimant has non-exertional impairments, the ALJ cannot rely solely upon the Medical-Vocational Guidelines to direct a disability determination. *See Sykes v. Apfel*, 228 F. 3d 259, 261 (3d Cir. 2000); *see also Poulus v. Comm'r of Soc. Sec.*, 474 F.3d 88, 94 (3d Cir. 2007).  An ALJ "cannot determine that a [Plaintiff's] nonexertional impairments do not significantly erode [her] occupational base under the [M]edical-[V]ocational [G]uidelines without either taking additional vocational evidence establishing as much…" *Sykes*,

228 F. 3d at 261.

The Plaintiff identified additional limitations that should have been included in the RFC assessment. As stated above, the ALJ's current RFC is not supported by substantial evidence, as it failed to incorporate Plaintiff's limitations, lifting impairments, and inability to walk or stand for long periods of time. The Plaintiff's testimony was not properly evaluated.

Thus, upon remand, the ALJ shall consider Plaintiff's non-exertional limitations and, if necessary, apply the appropriate Medical-Vocational Guidelines or obtain the guidance of a vocational expert to determine what, if any, jobs Plaintiff can perform.

### V.  CONCLUSION

The Court finds that this case will be remanded, pursuant to sentence four of 42 U.S.C. § 405(g). An implementing order will follow.